IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME HOWARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11 C 6045 |
| | ) | |
| RICK HARRINGTON, | ) | |
| | ) | |
| Respondent.[1] | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Pro se petitioner Jerome Howard ("Howard") has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging his state court jury conviction of first degree

murder, predicated on felony home invasion.  (Dkt. No. 1.)  For the reasons set forth below,

Howard's petition is denied. Civil Case Terminated.

BACKGROUND

On December 24, 2002, the decedent, James Saunders ("Saunders") was shot and killed

in Sherita Pollard's ("Sherita") town house, after Howard entered with his two nephews and

confronted Saunders.  Sherita and Howard were married at the time, but estranged, and Sherita

was dating Saunders.  Howard was not armed on December 24, 2002, but his nephews carried

guns.

Howard was charged with home invasion and felony murder, predicated on home

invasion.  At trial, the government had the burden of proving beyond a reasonable doubt that

---

[1] As the current Warden of the Menard Correctional Center, Rick Harrington is automatically
substituted as the proper respondent in this case. *See* Fed. R. Civ. P. 25(d).  The Clerk of Court
is directed to update the case caption accordingly.

Howard entered "the dwelling place of another" without authorization. *See* former 720 ILCS

5/12-11(a) (renumbered as 720 ILCS 5/19-6(a) (effective Jan. 1, 2013)). The facts relevant to

this element of the crime, as summarized by the Appellate Court of Illinois, are as follows:

> Sherita lived in the town house with her two adult children, Lavita Govan (Lavita)
> and Alfonso Govan (Alfonso). Although [Howard] had lived with Sherita in the
> town house in the past, he no longer lived there [at the time of the shooting] and
> had never been listed on the lease.
>
> * * *
>
> The evidence adduced at trial showed that Sherita and [Howard] had dated for
> several years before their marriage. During that time, [Howard] had apparently
> lived with Sherita intermittently in different apartments. In 1998, before
> [Howard] and Sherita were married, he moved into Sherita's town house. At the
> time, Sherita's children, Lavita and Alfonso, were teenagers. Sherita, Lavita and
> Alfonso were the only persons listed on the town house lease. [Howard] concedes
> that he was never on the lease. The town house rent was subsidized by the
> Chicago Housing Authority (CHA). Sherita paid the rent, gas, telephone, and
> electricity bills. [Howard] testified that Sherita would not have gotten the same
> lease rate from CHA if it knew that he was living there and was employed.
>
> At some point in 2001, [Howard] and Sherita ended their relationship. Sherita
> started dating Saunders. She reunited with [Howard] and they married on July 18,
> 2002. The couple separated two weeks later. [Howard] moved out and took all of
> his personal belongings, except for his television, which was also Sherita's
> property, and some of his weights. He left no clothing or personal items.
> [Howard] testified that he still had a key and that he had continued to go to the
> apartment. Sherita, however, testified that she took her key back, that [Howard]
> was not permitted to have a key when he moved out, and she never saw him use a
> key to gain access to the town house. One of Sherita's sisters testified that she
> dropped by the town house once, two weeks before the crime, and that [Howard]
> was present at the apartment. Sherita, however, was not present.

*People v. Howard*, 870 N.E.2d 959, 961-62 (Ill. App. Ct. 1st Dist. 2007). On the day of the

shooting, Howard entered Sherita's town house with his two nephews sometime after 11:00 p.m.

and confronted Saunders. *Id.* at 962. As the appellate court noted, it was undisputed at trial that

"nobody gave [Howard] permission to enter the town house on the night of the shooting" and,

although Howard had lived in the town house in the past and was still married to Sherita on the

night of the shooting, he had "moved out of Sherita's town house and took his belongings with him" prior to the night of the shooting. *Id.* at 968.

Howard was convicted by a jury of first degree murder, predicated on felony home invasion, on February 8, 2005, and was sentenced to 45 years of imprisonment.

PROCEDURAL HISTORY

Howard raised two claims on direct appeal, with the assistance of counsel. First, Howard argued that, as a matter of law, he did not invade the "dwelling place of another," because Sherita's town house was his martial residence. (State Court Record, Ex. C. ("Appellant Br.") at 13-18.) Second, Howard argued that he was denied his right to a fair trial by "pervasive prosecutorial misconduct," including (1) the prosecution's attempt to diminish its burden of proof by suggesting a theory of proximate causation during its cross examination of Howard; (2) the prosecution's use of deceptive photographs and testimony to suggest that Howard broke down the front door, when the government stipulated that it was the police who broke the door; and (3) the prosecution's impermissible use of other crimes evidence to suggest Howard's guilt. (*Id.* at 19-31.) The appellate court rejected Howard's arguments and affirmed his conviction on June 15, 2007. *See People v. Howard*, 870 N.E.2d 959 (Ill. App. Ct. 1st Dist. 2007).

In his petition for leave to appeal to the Supreme Court of Illinois, filed with the assistance of counsel, Howard argued that the appellate court erred as a matter of law in holding that a married defendant can be convicted of home invasion for entering his marital residence unless he has *both* a tenancy interest *and* a possessory interest in the home. (State Court Record, Ex. F ("PLA").) The Supreme Court of Illinois denied Howard's PLA on his direct appeal on September 26, 2007. (State Court Record, Ex. G.)

On May 20, 2008,[2] Howard filed a pro se post-petition conviction in the Circuit Court of Cook County asserting numerous claims. (*See generally* State Court Record, Ex. H at C:47-C:69 ("Post-Conviction Pet.").) First, Howard argued that his trial counsel was constitutionally ineffective for failing to call Alfonso[3] as a witness, and that his appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal. Second, Howard argued that the state had presented insufficient evidence of home invasion, because Sherita had been coerced into giving false and misleading testimony at trial. In support of this argument, Howard also attached the affidavit of Debbie Ealy ("Ealy"), Sherita's sister, stating that Howard was "living with my sister on December 24, 2002, in the apartment located at 802 East 41 street apartment #C." (Post-Conviction Pet., Ex. B (C:61) ("Ealy Affidavit") ¶ 1.) Third, Howard argued that his appellate counsel was constitutionally ineffective for failing to raise seven specific issues on direct appeal, including: "(A) The State failed to prove petitioner guilty beyond a reasonable doubt.[;] (B) Due process violation of the U.S. and Illinois Constitution (1970).[;] . . . [and] (F) The State failed to prove every material allegation of the offense beyond a reasonable doubt." (Post-Conviction Pet. at C:52.) Fourth, Howard argued that his trial counsel was constitutionally ineffective for stipulating to Officer Williams's testimony that he could not gain entry into Sherita's town house

---

[2] It appears that, although Howard mailed his post-conviction petition on May 20, 2008, the Circuit Court of Cook County inexplicably did not receive and file Howard's post-conviction petition until February 6, 2009. (*See* Dkt. No. 28 ("Gov't Ans.") at 6 n.4; *see also* Dkt. No. 11.) The government acknowledges that "the timeliness of the petition is not clear" in this case. (*Id.* at 10.) Rather than present this question of fact to the court for decision, however, the government has chosen not to move to dismiss Howard's petition as untimely. (*Id.*) In such circumstances, this court accedes to the government's decision. *See Wood v. Milyard*, 132 S. Ct. 1826, 1830 (2012) ("A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate wavier of a limitations defense.").

[3] This court assumes that witness "Alfonso Govan" and witness "Alfonzo Govan" are the same individual, and adopts the spelling used by the appellate court.

4

when he arrived at the crime scene, and that Howard's appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal. Fifth, Howard argued that he was denied his right to a fair and impartial trial when the trial court allowed pictures of the broken door at the crime scene to go to the jury; that his trial counsel was constitutionally ineffective for failing to object to the pictures; and that his appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard on direct appeal. Finally, Howard argued that his trial counsel was constitutionally ineffective for failing to cross-examine Lavita with respect to her testimony that she observed Howard kick-in the front door, contrary to the police report stating that the police had to break down the door to enter the crime scene, and that his appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard on direct appeal. The trial court dismissed Howard's post-conviction petition as "frivolous and patently without merit" on March 20, 2009. (State Court Record, Ex. H at C:74-C:83 ("3/20/09 Order") (Ford, J.).)

Howard appealed the dismissal of his post-conviction petition with the assistance of counsel, arguing that the trial court erred in summarily dismissing Howard's post-conviction petition because it raised an arguable claim of actual innocence based on the new evidence set forth in the Ealy Affidavit. (State Court Record, Ex. I ("Appellant's Post-Conviction Br.").) The appellate court, however, concluded that Howard "does not claim that Ealy's testimony is new evidence, but only that she can attest to the fact that he did not enter [Sherita's] home unlawfully because he lived with [Sherita] at that time." *People v. Howard*, No. 1-09-1007 (Ill. App. Ct. 1st Dist. Nov. 4, 2010) (State Court Record, Ex. L ("11/4/10 Order") at 5). The appellate court further concluded that Howard was procedurally barred from raising a claim of actual innocence

based on newly discovered evidence, because he had not raised this issue in his post-conviction petition—instead relying on the Ealy Affidavit only for purposes of challenging the sufficiency of the State's evidence against him. (*Id.*) Finally, the appellate court held that Howard's sufficiency of the evidence claim was "barred by the doctrine of *res judicata*"—because Howard had already raised a sufficiency of the evidence claim on direct appeal—and that "[Howard's] petition was properly dismissed as frivolous and patently without merit." (*Id.* at 6.)

Howard filed a pro se petition for leave to appeal with the Supreme Court of Illinois, arguing: (1) that the post-conviction trial court erred by summarily dismissing his post-conviction petition when it raised a gist of a claim of actual innocence based on new evidence, and the appellate court erred in affirming the trial court's ruling in this regard; (2) that the post-conviction trial court erred by dismissing Howard's petition based on *res judicata* without considering if fundamental fairness required relaxation of the *res judicata* doctrine, and the appellate court erred in affirming the trial court's ruling in this regard; and (3) the Supreme Court of Illinois should exercise its supervisory authority to correct a fundamental miscarriage of justice where the appellate court refused to rule on Howard's claim of actual innocence. (State Court Record, Ex. M ("Post-Conviction PLA").) Howard's Post-Conviction PLA was denied on January 26, 2011 (State Court Record, Ex. N), and he filed his § 2254 petition on August 30, 2011.

Howard raises numerous grounds for relief in his § 2254 petition, which this court summarizes as follows:

> Claim One: Howard's conviction must be reversed because, as a matter of law, Howard and his nephews were authorized to enter Sherita's town house, which was Howard's marital residence.
>
> Claim Two: Howard was denied due process due to pervasive prosecutorial misconduct, including (1) the prosecution's attempt to diminish its burden of

proof by suggesting a theory of proximate causation during its cross examination of Howard; (2) the prosecution's use of deceptive photographs and testimony to suggest that Howard broke down the front door, when the government stipulated that it was the police who broke the door; and (3) the prosecution's impermissible use of other crimes evidence to suggest Howard's guilt.

Claim Three:  Howard's trial counsel was constitutionally ineffective for failing to call Alfonso as a witness, and Howard's appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal.

Claim Four:  The evidence was insufficient to convict Howard of felony home invasion, because Sherita had been coerced into giving false and misleading testimony at trial and Ealy can attest that Howard was living at Sherita's town house at the time of the shooting.

Claim Five:  Howard's appellate counsel was constitutionally ineffective for failing to raise on direct appeal the issues preserved for review in Howard's post-trial motion.

Claim Six:  Howard was denied his right to confront Officer Williams when Howard's trial counsel stipulated to what Officer Williams's testimony would be if called, Howard's trial counsel was constitutionally ineffective for entering the stipulation, and Howard's appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal

Claim Seven:  Howard was denied his right to a fair and impartial trial when the trial court allowed pictures of the broken door at the crime scene to go to the jury, Howard's trial counsel was constitutionally ineffective for failing to object to the pictures, and Howard's appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal

Claim Eight:  Howard's trial counsel was constitutionally ineffective for failing to cross-examine Lavita regarding her testimony that she observed Howard kick in the front door, contrary to the police report stating that the police had to break down the door to enter the crime scene, and Howard's appellate counsel was constitutionally ineffective for failing to raise the ineffectiveness of trial counsel in this regard as an issue on direct appeal.

## LEGAL STANDARD

Under 28 U.S.C. § 2254, an individual in custody pursuant to a state court judgment may

petition a federal district court for a writ of habeas corpus "on the ground that he [or she] is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a). As noted by the Seventh Circuit, however, "[f]ederal habeas relief from a state-court

criminal judgment is not easy to come by." *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir.

2013) (quoting *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012)).

Relevant to Howard's § 2254 petition, the Antiterrorism and Effective Death Penalty Act

("AEDPA") "requires state prisoners seeking a federal writ of habeas corpus to exhaust available

state remedies." *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013) (citing 28 U.S.C.

§ 2254(b)(1)). Additionally, if "the habeas petitioner has failed to fairly present to the state

courts the claim on which he [or she] seeks relief in federal court and the opportunity to raise that

claim in state court has passed, the petitioner has procedurally defaulted that claim" and it cannot

be presented as grounds for federal habeas relief. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th

Cir. 2004). As explained by the Seventh Circuit in *Bolton*,

> The exhaustion requirement provides the State an "'opportunity to pass upon and
> correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513
> U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275
> (1971)); *Baldwin* [*v. Reese*], 541 U.S. [27,] 29 [(2004)]. "To provide the State
> with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in
> each appropriate state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal nature of the
> claim." *Baldwin*, 541 U.S. at 29 (quoting *Duncan*, 513 U.S. at 365-66);
> *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d
> 505, 513 (7th Cir. 2004). Adequate presentation of a claim to the state courts
> requires the petitioner to present both the operative facts and the legal principles
> that control each claim. *Pole* [*v. Randolph*], 570 F.3d [922,] 934-35 [(7th Cir.
> 2009)]. *See also Harrison v. McBride*, 428 F.3d 652, 661 (7th Cir. 2005) (at its
> core, the task of the habeas court is to assess, in concrete, practical terms, whether
> the state court was sufficiently alerted to the federal constitutional nature of the
> issue to permit it to resolve that issue on a federal basis).
>
> * * *
>
> Where the petitioner has already pursued his state court remedies "and there is no
> longer any state corrective process available to him, it is not the exhaustion
> doctrine that stands in the path to habeas relief, *see* 28 U.S.C. § 2254(b)(1)(B)(i),

but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514. *See also Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010) (when a petitioner fails to raise a particular claim on direct appeal or in post-conviction proceedings, the claim is procedurally defaulted). Procedural default generally precludes a federal court from reaching the merits of a habeas claim when the claim was not presented to the state courts and it is clear that the state courts would now find the claim procedurally barred. *Perruquet*, 390 F.3d at 514.

*Id.* at 694-96.

"A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default, *or* he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations omitted) (emphasis in original). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986)). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). To establish a miscarriage of justice, a petitioner "must convince the court that no reasonable juror would have found [the petitioner] guilty but for the error(s) allegedly committed by the state court." *Perruquet*, 390 F.3d at 515.

## ANALYSIS

1.   Claim One

In Claim One, Howard argues that his conviction of first degree murder, predicated on felony home invasion, constitutes reversible error, because "petitioner and his nephews were authorized to enter petitioner's Marital Residence." (Dkt. No. 1 at 1-8 ("Pet."), Part III ¶ 1.(A).) According to Howard, he "could not have committed Home Invasion because . . . [h]e entered

his own Marital Residence with 'Authority,'" and was also authorized to give his nephews permission to enter the town house. (Dkt. No. 1 at 10-19 ("Petitioner's Mem.") at 1.) In support of this argument, Howard states "[i]t was undisputed at trial that the Townhouse was petitioner's Marital Residence." (*Id.* at 2.)

The term "marital residence" is not part of the home invasion statute and is not further defined by Howard, making it difficult for the court to ascertain the exact contours of Howard's argument.[4] *See Howard*, 870 N.E.2d at 967 (noting that the phrase "marital residence" "does not appear in the statute"). The appellate court explicitly noted that it was undisputed at trial that Howard and Sherita were still married at the time of the shooting, and that they had resided in Sherita's town house together as a married couple for at least a two-week period of time. *Howard*, 870 N.E.2d at 968. The appellate court further noted, however, that it was undisputed "on the date that the shooting and alleged home invasion occurred, . . . [Howard] no longer lived in the town house and was living elsewhere" and Howard had "moved out of Sherita's town house and took his belongings with him." *Id.* Moreover, Howard "was not named in the lease and *never* had a tenancy interest in the CHA-subsidized town house." *Id.* (emphasis in original). Under the circumstances, the appellate court concluded that Howard had neither a tenancy interest nor a possessory interest in Sherita's town house. *Id.* at 965-66. The appellate court rejected Howard's argument that his ongoing marital relationship with Sherita was a dispositive factor under the home invasion statute, noting that the defendant in *People v. Oakley*, 719 N.E.2d

---

[4] The Illinois home invasion statue includes the following relevant element:

> A person . . . commits home invasion when *without authority* he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present . . . ."

*See* former 720 ILCS 5/12-11(a) (renumbered as 720 ILCS 5/19-6(a) (effective Jan. 1, 2013)) (emphasis added).

654 (Ill. 1999), was similarly convicted of home invasion "when he entered *his former marital residence*." *Howard*, 870 N.E.2d at 967 (emphasis in original). Ultimately, the appellate court held that "unless a defendant has *both* the requisite tenancy interest *and* a possessory interest in the dwelling place, he can be charged with home invasion" for entering that dwelling without authority. *Id.* at 965 (emphases in original).

To the extent Howard questions the appellate court's application of the Illinois home invasion statute to the undisputed facts of his case, this court agrees with the government that Claim One is not cognizable on habeas review. *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) ("We may not review state-court interpretations of state law."). As the Supreme Court has noted, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Simply put, errors of state law are "beyond the power of a federal habeas court to address." *Perruquet* at 512.

On the other hand, the court recognizes that, as a pro se litigant, Howard is "entitled to a liberal construction" of his petition. *Perruquet*, 390 F.3d at 512. Howard has styled Claim One as a Fourteenth Amendment violation, and has alleged that the government failed to prove every element of the Illinois home invasion statute—specifically, that Howard entered Sherita's town house "without authority"—beyond a reasonable doubt. "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Accordingly, "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find

guilt beyond a reasonable doubt has stated a federal constitutional claim" cognizable on habeas review. *Jackson*, 443 U.S. at 319.

The problem with Howard's assertion of a sufficiency of the evidence claim in Claim One is that it merely rehashes the same arguments he made to the appellate court when he presented his "legal argument regarding the definition of the home invasion statute's phrase 'of another.'" (Appellant Br. at 13.) As in *Curtis*, this court finds that Howard is "impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law . . . by recasting [his] arguments as challenges to [the] state court's application of *Jackson*." *Curtis*, 552 F.3d at 582. Howard ignores the appellate court's legal determination that his ongoing marital relationship with Sherita was not dispositive of whether he entered the dwelling place of another, as well as its legal conclusion that Howard did not have a tenancy interest or a possessory interest in Sherita's town house despite the fact that he was married to Sherita. Howard does not explain how the evidence at trial was insufficient to prove beyond a reasonable doubt that he entered Sherita's town house without authority,[5] other than repeatedly relying on the phrase "marital residence." The Appellate Court of Illinois has determined as a matter of state law that Howard had no tenancy interest or possessory interest in Sherita's town house, despite his ongoing marital relationship with Sherita. As explained above, this court is not in a position to question the appellate court's interpretation and application of state law on this point, and is not authorized to do so on federal habeas review. Because Howard's insufficiency of the evidence claim in Claim One would require this court to second-guess the Appellate Court of Illinois's interpretation and application of state law, this court cannot grant federal habeas relief on the grounds set forth in Claim One of Howard's petition.

---

[5] Howard does not contest the appellate court's statement that "nobody gave [Howard] permission to enter the town house on the night of the shooting." *Howard*, 870 N.E.2d at 968.

2.    Claim Four

In Claim Four of his petition, Howard again raises a sufficiency of the evidence claim, this time based on Sherita's allegedly "[c]oerced, false, and mis-leading testimony" and the statements contained in the Ealy Affidavit.[6]  (Petitioner's Mem. at 6.)  As noted above, Howard included a sufficiency of the evidence claim on direct appeal, but chose at that time to present only his "legal argument regarding the definition of the home invasion statute's phrase 'of another.'"  (Appellant Br. at 13.)  Howard did not argue on direct appeal that Sherita's testimony was coerced, false, or misleading, nor did he alert the appellate court to the information contained in the Ealy's Affidavit.  In other words, Howard did not adequately present the operative facts of his sufficiency of the evidence claim to the state court for review.  *See Bolton*, 730 F.3d at 695 ("Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim.").  Moreover, "it is clear that the state courts would now find the claim procedurally barred."  *Id.* at 696.  As explained by the post-conviction appellate court, because Howard argued on direct appeal that "the State did not prove him guilty of home invasion beyond a reasonable doubt because he had not entered the home of 'another' as required by the home invasion statute," and because the appellate court addressed this issue on direct appeal, rejecting Howard's assertion and affirming his conviction, the post-conviction trial court was barred from considering the issue anew under

---

[6] Howard has not attached the Ealy Affidavit to his petition, despite having included a cover page for "EXHIBIT {B} AFFIDAVIT."  (*See* Dkt. No. 1 at Page 22 of 31.)  The court assumes that Howard is referring to the same April 5, 2008 affidavit attached as Exhibit B to Howard's Post-Conviction Petition.

the doctrine of *res judicata*. (11/4/10 Order at 5-6.) Accordingly, this court agrees with the government that Howard has procedurally defaulted Claim Four.[7]

For the sake of completeness, the court notes that Howard also relied on the Ealy Affidavit to assert a claim of "actual innocence" based on newly discovered evidence before both the Appellate Court of Illinois and the Supreme Court of Illinois. In his reply brief, Howard contends that he continues to advance a claim of actual innocence in his federal habeas petition. (Dkt. No. 33 ("Reply") at 2.) Howard and the government both agree, however, that actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." (*Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)); *see also* Gov't Ans. at 17.) To successfully assert a claim of actual innocence, a petitioner must "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (quoting *Schlup*, 513 U.S. at 329). The Ealy Affidavit does not meet this demanding threshold. As noted in Howard's direct appeal to the Appellate Court of Illinois, Sherita and Lavita both testified at trial that Howard had moved out a couple of weeks after Howard and Sherita married on July 18, 2002. (Appellant Br. at 5.) Howard himself testified that he moved out of Sherita's town house on December 17, 2002, and another of Sherita's sisters, Denise Pollard, testified that, "at the time of the shooting, Sherita had just recently kicked Howard out." (*Id.* at 5-6.) Against this backdrop, this court finds that a reasonable juror could have rejected Ealy's testimony that Howard was "living with [Sherita] on December 24, 2002," (Ealy Aff. ¶ 1), and could have

---

[7] To the extent Howard has asserted a due process claim under *Napue v. Illinois*, 360 U.S. 264 (1959), with respect to Sherita's testimony, this claim also has been procedurally defaulted, because Howard did not include this claim in his appeal from the denial of his post-conviction petition.

concluded that Howard no longer had a possessory interest in Sherita's town house at the time of the shooting. The Ealy Affidavit also fails to cure the undisputed fact that Howard "*never* had a tenancy interest in the CHA-subsidized town house," *Howard*, 870 N.E.2d at 968 (emphasis in original), and therefore could not claim that the town house was his own dwelling place under Illinois law as interpreted by the appellate court.

Because Claim Four has been procedurally defaulted, and Howard has failed to persuade the court that this default should be excused on the basis of actual innocence, this court has no authority to grant federal habeas relief on the grounds set forth in Claim Four of Howard's petition.

3.      Claims Two, Three, Five, Six, Seven, and Eight

Howard's remaining claims are also procedurally defaulted. As noted above, a state prisoner seeking federal habeas corpus relief must "fairly present" his or her federal claim "in each appropriate state court (including a state supreme court with powers of discretionary review)" before filing a petition for habeas corpus relief in federal court. *Baldwin*, 541 U.S. at 29; *see also* 28 U.S.C. § 2254(b)(1)(A). If "the petitioner has already pursued his state-court remedies and there is no longer any state corrective process available to him," the procedural default doctrine "normally will preclude a federal court from reaching the merits of a habeas claim." *Perruquet*, 390 F.3d at 514. In this case, Howard did not present Claims Two, Three, Five, Six, Seven, or Eight to the Supreme Court of Illinois, nor did he present Claims Three, Five, Six, Seven, or Eight to the Appellate Court of Illinois. Because Howard has exhausted his direct appeal in state court and the post-conviction procedures available to him in state court, "the opportunity to raise [these] claim[s] in state court has passed" and they are procedurally defaulted. *Id.*

15

In his reply, Howard argues that "the operative facts and legal principles required for fair presentation are embedded (inter alia)" within "a different claim." (Reply at 3.) Howard does not further explain his reasoning, and this court is at a loss to understand how Claims Two, Three, Five, Six, Seven or Eight were "embedded" in Howard's Post-Conviction PLA, which addressed only the Ealy Affidavit and Howard's claim of actual innocence. *Compare McGee v. Bartow*, 593 F.3d 556, 654 n.6, 567 n.9 (7th Cir. 2010) (where an ineffective assistance of counsel claim is "actually exhausted," the Seventh Circuit will considered the "embedded" claim (e.g. the federal claim that counsel failed to raise) to have been fairly presented to the state court). Although Howard is correct in arguing that his Post-Conviction PLA should be construed liberally, Howard does not explain how a liberal construction of his Post-Conviction PLA demonstrates the "substance of" the federal claims included in Claims Two, Three, Five, Six, Seven, and Eight. (Reply at 3.) Similarly, the federal claims included in Claims Two, Three, Five, Six, Seven, and Eight are noticeably absent from Howard's initial PLA, which challenged only the appellate court's "new statutory interpretation" of the home invasion statute. (PLA at 6.) This court is not persuaded by Howard's underdeveloped arguments on this point, and finds Claims Two, Three, Five, Six, Seven, and Eight to have been procedurally defaulted.

4.      Cause and Prejudice for Procedural Default

As noted above, "[p]rocedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default." *Bolton*, 730 F.3d at 696. "Ineffective assistance of counsel can constitute cause to set aside a procedural bar," *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010), and Howard argues that his appellate counsel "subjected him to" procedural default by failing to include Claims Two, Three, Five, Six, Seven, and Eight as issues on appeal. (Reply at 2.) One problem with this argument is that it, too, must be presented

to the state court for review. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). In other words, a claim of ineffective assistance of counsel "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). Because Howard did not argue to the Supreme Court of Illinois that his appellate counsel was constitutionally ineffective, he cannot now argue that his appellate counsel's constitutionally ineffective performance established cause for his procedural default of Claims Two, Three, Five, Six, Seven, and Eight. Although Howard argues that his pro se Post-Conviction PLA "preserve[d] the [defaulted] issues" for habeas review, he does not explain how, and the court is not persuaded by this argument. (Reply at 3.) Howard's citation to cases in which petitioners included their federal claims in pro se supplemental briefs before the state courts is irrelevant, as Howard did not actually include his federal claims in his pro se Post-Conviction PLA. *Cf. Holloway v. Horn*, 355 F.3d 707, 715-16 (3d Cir. 2004); *Clemmons v. Delo*, 124 F.3d 944, 947-48 (1997); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997); *McBride v. Estelle*, 507 F.2d 903, 904 (5th Cir. 1975).

Moreover, Howard cannot properly rely on the allegedly ineffective assistance of his appellate counsel, because he had no constitutional right to counsel at the two stages of proceedings when his claims were defaulted. Claim Two, for example, was defaulted when it was not presented in Howard's initial PLA on direct appeal. Howard cannot blame this error on constitutionally ineffective appellate counsel, because "there is no constitutional right to *any* assistance of counsel in seeking discretionary, third-tier review." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (emphasis in original); *see also Wainwright v. Torna*, 455 U.S. 586, 587

(1982) ("a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals"). Claims Three, Five, Six, Seven, and Eight were defaulted when they were not included in Howard's post-conviction appeal; however, "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1319-20 (2012) (noting that its "limited qualification to *Coleman* . . . does not concern attorney errors in [proceedings other than initial post-conviction review], including appeals from initial-review collateral proceedings"). Where there is no constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel." *Coleman*, 501 U.S. at 752. Only "[a]ttorney error that constitutes ineffective assistance of counsel" serves as cause for a procedural default. *Coleman*, 501 U.S. at 753-54. Accordingly, the failure of Howard's appellate counsel to properly raise Claims Two, Three, Five, Six, Seven, and Eight cannot constitute cause for Howard's procedural default of these claims.

Finally, the court notes that Howard has made no real attempt to describe how he was prejudiced by the constitutional violations he has claimed. *See Lewis*, 390 F.3d at 1026 ("Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.") (internal quotation marks and emphasis removed).

5.      Howard's Request for Stay

Howard requests "[i]n the event . . . this Court finds this to be a mixed petition of exhausted and unexhausted claims," that the court enter an order of "stay and abeyance" to allow Howard the opportunity to exhaust his claims in state court. (Reply at 4.) Because this court's denial of Howard's habeas petition is based on its findings of procedural default, rather than

Howard's failure to exhaust state court remedies, Howard's requested relief is inapposite. *See Bolton*, 730 F.3d at 696 (procedural default applies when "there is no longer any state corrective process available" to the petitioner). Howard's request for a stay is denied.

6.      Certificate of Appealability

This court will issue a certificate of appealability if it finds that Howard has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this burden, Howard must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Because this court finds it is not debatable among reasonable jurists that Howard's federal claims are either procedurally defaulted (Claims Two, Three, Four, Five, Six, Seven, and Eight) or non-cognizable on federal habeas review (Claim One), the court denies Howard's request for a certificate of appealability.

                                        CONCLUSION

For the reasons set forth above, Jerome Howard's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Dkt. No. 1), is denied, and the court declines to issue a certificate of appealability. Civil Case Terminated.

                              ENTER:


                              _____
                              JAMES F. HOLDERMAN
                              United States District Court Judge


Date:   January 7, 2014